**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| PAUL N. DAPONTES, | : | Case No. 05-51213 |
| | : | |
| Debtor. | : | |

_____

APPEARANCES:

James M. Nugent, Esq.                              Attorney for the Debtor
Harlow, Adams & Friedman, P.C.
300 Bic Drive
Milford, CT 06460


Jennifer L. Schancupp, Esq.                        Attorney for the Creditor
Susman, Duffy & Segaloff, P.C.                     New Alliance Bank
P.O. Box 1684
55 Whitney Avenue
New Haven, CT 06507

_____

**MEMORANDUM AND ORDER ON OBJECTION**

**TO PLAN OF REORGANIZATION**

Alan H. W. Shiff, United States Bankruptcy Judge


On September 19, 2005, the debtor filed a chapter 11 petition. On April 26, 2006, he filed a Plan of Reorganization. It is undisputed that the funding of the Plan is dependent upon his future wages. *See* Stipulation of Facts, August 7, 2006, at ¶¶ 4, 5. New Alliance Bank objects to the confirmation because its proposal to use future wage income is forbidden by law. *See* 11 U.S.C. § 1129(a)(3); *see also infra.*

## DISCUSSION

Code section 541(a)(6) provides that "earnings from services performed by an individual debtor after the commencement of the case" are not included in property of the estate. 11 U.S.C. § 541(a)(6). Although that subsection has not been specifically amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), its meaning has been affected. BAPCPA added § 1115(a)(2), which provides that post-petition earnings of an individual debtor are property of a bankruptcy estate. *See* 11 U.S.C. § 1115(a)(2). The debtor argues that § 1115(a)(2) supports his position that his Plan may be funded from future wage income, s*ee* debtor's August 10, 2006 Memorandum, at p. 4, and had this case been commenced after BAPCPA's October 17, 2005 effective date, he would be correct. But it was not. The issue, therefore, is whether the Plan may be confirmed under the pre-BAPCPA code.

Code section 1129 provides in relevant part:

> (a) The court shall confirm a plan only if all of the following requirements are met:
> . . .
> (3) The plan has been proposed . . . not by any means forbidden by law.
>
> 11 U.S.C. § 1129(a)(3).

The 1129 (a)(3) prohibition is expansive, i.e., it includes both federal and any other applicable law. *In re Koelbl*, 751 F.2d 137, 139 (2d Cir. 1984) ("'[m]eans forbidden by law' refers *inter alia* to state law") (citing *In re Landau Boat Co.*, 13 B.R. 788, 794 (W.D. Mo. 1981)). Thus, the analysis initially turns on whether the use of future wages, i.e., non-estate property, would be permitted under federal common law.[1]

---

[1] The question of whether a chapter 11 plan funded with future wages would violate the Thirteenth Amendment's prohibition against involuntary servitude was not determined by the courts in the *Flor* cases, which addressed an identical funding source. *See infra*, at p. 3. The *Flor I* court rejected the debtors' argument that since funding a chapter 13 plan with future wages was not prohibited by the Thirteenth

In *Local Loan Co. v. Hunt*, 292 U.S. 234, 245 (1934), the Supreme Court concluded that a debtor's assignment of future wages in a chapter 11 case frustrates the fresh start policy.  Similarly, in *In re Flor* (hereafter "*Flor I*")[2], the bankruptcy court concluded that "it is against public policy to enter a Chapter 11 plan confirmation order which purports to authorize and validate a voluntary assignment of an individual's future wages".  166 B.R. 512, 516 (Bankr. D. Conn. 1994), *aff'd, In re Flor* (hereafter "*Flor II*"), Civil No. 3:94CV1130, 1995 U.S. Dist. LEXIS 22407, at *7 (D. Conn. Mar. 20, 1995), *appeal dismissed*, 79 F.3d 281 (2d. Cir. 1996); *see also In re Gibbs*, 230 B.R. 471, 473-474 (Bankr. D. Conn. 1999).

The debtor attempts to distinguish his Plan from *Flor* on the basis that it is not entirely dependent upon wage income and does not include a "wage assignment scheme".  Debtor's Memorandum, at pp. 4-7.  The issue here, however, is not to what extent future wages are proposed to fund a plan, but rather whether any such funding is forbidden by any law.[3]

The stipulated facts do not support the debtor's argument.  To the contrary, he has conceded that "the success of [his] [P]lan depends upon his continued receipt and use of

---

Amendment, that Amendment should not prohibit the same funding in their chapter 11 case.  *See Flor I*, *infra*, 166 B.R. at 514-15 (citing 11 U.S.C. § 1306(a)(2), which includes future wages in the definition of property of a chapter 13 estate).  *See also Flor II, infra*, 1995 U.S. Dist. LEXIS 22407.

[2] A reference to the bankruptcy court decision as *Flor I*, and the district court decision as *Flor II,* is necessary, in part, due to the district court's reliance upon additional authority, not specifically relied upon in *Flor I*.  Where both decisions support the text, the designation "*Flor*" is used.

[3] The debtor also attempts to support his Plan by arguing that other jurisdictions have allowed funding from future wages.  *See, e.g.*, *In re Robert B. Harman, Leanna J. Harman*, 141 B.R. 878 (Bankr. E.D. Pa. 1992); *In re Charles La Grant Kemp*, 134 B.R. 413 (Bankr. E.D. Cal. 1991); *In re Richard F. Fernandez*, 97 B.R. 262 (Bankr. E.D.N.C. 1989). The debtor's reliance on those cases is unavailing.  The same conclusion was reached in *Flor I*, where an identical argument citing the same cases was presented to, and rejected by, the court.  *See Flor I, supra,* 166 B.R. at 516 (explaining that "[n]one of these cases [referenced above] discuss the issues raised in the proceeding").

his salary and sales commissions . . . to fund his [P]lan". Stipulation of Facts, at ¶ 4. Moreover, of the Plan's potential funding sources, only the debtor's future salary and commissions are certain to be used. *See id.,* at ¶¶ 3, 4*; see also* debtor's First Amended Disclosure Statement, at pp. 6-7. The other sources are speculative. The plan in *Flor* and the Plan here are therefore indistinguishable as to their funding source.

The debtor's next argument is similarly unpersuasive. He asserts that his Plan is distinguishable from *Flor* because the plan there proposed funding from a wage execution. However, the *Flor* wage execution was not proposed in a plan but rather in a supplemental brief after the plan was filed to buttress the argument that such plans could be enforceable. *See Flor I, supra*, 166 B.R. at 515. The *Flor I* court rejected that argument. *Id*. [4]

The proposed use of future income to fund a plan is also prohibited by the law of Connecticut. In fact it is expressly prohibited by Connecticut General Statute Section 52-361a(i), which provides in relevant part:

> Any assignment by an employee of his earnings shall be void except (1) payments due for support in public welfare cases and payments pursuant to a family support judgment, and (2) deductions for union dues . . .
> Conn. Gen. Stat. § 52-361a(i) (2004).

As the *Flor II* concluded, the use of "future wages to fund the plan at issue would be contrary to . . . Connecticut law". *Flor II, supra*, 1995 U.S. Dist. LEXIS 22407 at *6-7 (citing Conn. Gen. Stat. § 52-361a(i)). The court adopts the reasoning of *Flor I* and *Flor II*.

---

[4] "The debtors' suggestion in their supplemental brief that the court enter a wage execution . . . misses the mark". *Flor I, supra*, 166 B.R. at 515.

4

## CONCLUSION

For the foregoing reasons, New Alliance Bank's objection to confirmation is sustained, and

IT IS SO ORDERED.

Dated at Bridgeport, Connecticut, this 23th day of March 2007.

BY THE COURT

Alan H. W. Shiff
United States Bankruptcy Judge